JANUARY TERM, 1884, No. 129.                    MAY 19, 1884.

# The Philadelphia and Reading Railroad Company v. Christman.

1. An attorney-at-law, without previous special authority or subsequent ratification, has no power to compromise a judgment obtained by him for his client, and satisfy the same, on the payment of part thereof only.

2. B, an attorney-at-law, made an unauthorized settlement of his client's judgment subsequent to his client's death, and before the appointment of an administrator upon his estate, receiving a portion of the judgment only, but entering on the record satisfaction of the whole thereof. Shortly after he informed his client's heirs of the settlement he had made, letters of administration were granted to A, who had been previously informed by B of the compromise, and a portion of the money received by B was paid to A. A rule being taken by A to show cause why the entry of satisfaction should not be stricken off, it was

*Held,* that the satisfaction should be stricken off only as to that portion of the judgment in excess of the money paid to B.

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

Error to the Court of Common Pleas of *Lancaster County.*

Rule granted on petition of W. D. Christman, administrator of Abraham Pennypacker, deceased, upon the Philadelphia and Reading Railroad Company, to show cause why the entry of satisfaction of a certain judgment obtained by Abraham Pennypacker in his lifetime against the said railroad company, should not be stricken off.

The facts, as they appear from the record, the petition, and the depositions taken under the rule are as follows:

An action on the case was brought September 5, 1879, in the common pleas of Chester county, by Abraham Pennypacker, against the Philadelphia and Reading Railroad Company, to recover damages for personal injuries sustained by him as a passenger over the defendant's railway, on October 4, 1877. This cause was removed to the common pleas of Lancaster county, September 4, 1880, a jury called October 11, 1880; the same day a verdict rendered in favor of the plaintiff for $3,500, and on October 13, 1880, judgment thereon. Charles H. Pennypacker and W. A. Atlee, Esqs., were the plaintiff's counsel of record, the former in Chester county, and the latter in Lancaster county. At this time, and until the

[The Philadelphia and Reading R. R. Co. *v.* Christman.]

spring of 1883, the defendant company was in the hands of receivers, and the judgment was not enforced by execution. On January 9, 1883, Charles H. Pennypacker agreed with the defendant's counsel to settle the same for $1,458 27, cash, and a due bill for five per cent. bonds for the same amount, when the bonds should be issued. The cash payment was made to Charles H. Pennypacker, and the due bill handed him the same day. By direction of Mr. Pennypacker, W. A. Atlee satisfied the judgment of record, January 19, 1883.

Abraham Pennypacker had died December 10, 1881, intestate, leaving to survive him a widow and four children. He had made an assignment for the benefit of his creditors some years before, to his nephew, W. D. Christman, and had died insolvent. W. D. Christman was spoken to by Charles H. Pennypacker, on January 13, 1883, about obtaining letters of administration upon the estate of Abraham Pennypacker, and agreed to procure them. The same day he received from Mr. Pennypacker $300 in cash, and the due bill. Letters of administration were issued to W. D. Christman on January 22, 1883. Subsequently, Mr. Pennypacker paid him an additional sum of $483 34; he also paid the widow for her exemption, $300, and retained for his and Mr. Atlee's fees, $375. These payments and the fees retained made up the sum of $1,458 28, received by Mr. Pennypacker from the defendant company. The settlement made was without the knowledge or consent of any of the heirs of Abraham Pennypacker, and beyond the receipt by the widow of her $300 exemption, there was no ratification of the compromise by any of them. Except by his acts in receiving, before becoming administrator, the $300 and the due bill, and accepting, after the letters were granted, the sum of $483 34, as stated above, there were no words or acts of the administrator Christman to indicate his ratification of the settlement.

Upon hearing and argument, the Court made the rule to strike off the entry of satisfaction absolute, LIVINGSTON, J., filing the following opinion, [after stating the facts:]

"Had the attorney, under such circumstances, power to make a settlement or an arrangement to accept or take less than the amount due on the judgment, and thus prevent the recovery of the whole sum due to the administrator or widow and heirs of the plaintiff, who, in his lifetime, had been his client? In Chambers *v.* Miller, Judge Gibson says: 'An attorney is bound by a sacred trust, and policy requires that there be no tampering with

[The Philadelphia and Reading R. R. Co. v. Christman.]

it. Beyond the exact justice in the particular case, it is the business of the law to bind mankind to an elevated and stern morality by making the consequence of a departure from it as disastrous as possible.'"

A number of cases were cited on the argument as to the power of an attorney-at-law to compromise and settle doubtful cases or claims in the absence of and without special authority from his client, but, in our judgment, these have no application to the case under consideration. The authority of an attorney-at-law, regularly employed, to compromise pending litigation of doubtful claims, is fully recognized by the English courts, and may, speaking generally, be said to be so recognized by the courts of Pennsylvania as well as in most of the United States. But this case is not of this character. Here the client had obtained judgment, thus terminating with it all the uncertainties surrounding it; he had ended all difficulties, differences, and doubts that might or could have been urged against his claim to recover damages—the subject of controversy and it had been clearly and conclusively ascertained and decided that he was entitled to receive and recover by an execution from the defendant a certain definite and fixed sum of money in cash. There was no doubtful or disputed claim, the subject of a pending suit, to be compromised or settled. It was simply an arrangement by an attorney, whose authority had been revoked by the death of his client, and before his administrator was appointed, with counsel for the defendant, to receive in full payment and satisfaction of the judgment a sum less than the amount due thereon; a portion thereof to be in bonds not then issued, and when issued to be worth less than the sum they were to represent, and to enter full satisfaction on the record of the judgment. This, under the law and the evidence presented, he had certainly no such previous or prior authority for doing as would make such arrangement binding or conclusive on the legal representative or widow and heirs of Abraham Pennypacker, deceased; and he had no power of his own mere motion to remit any portion of the judgment, even if he had been regularly employed as counsel at the time of his so doing. In Stackhouse v. O'Hara's Executors, 2 H., 89, Coulter, J., says: 'An attorney-at-law in Pennsylvania has very extensive powers in relation to conducting a suit, but after judgment this plenary power, in a great measure, ceases, excepting as to his power of receiving the amount of the judgment, and giving a receipt for it.' In Jewett v. Wadleigh, it is said: 'An attorney-at-law

has no authority by virtue of his general employment to discharge an execution in favor of his client unless upon payment of its whole amount.' If he receives a less sum, it will not preclude his client from recovering the balance remaining unpaid. In Todd and Ireland it is said: 'A party will not be bound by a contract entered into on his behalf by his attorney-at-law without previous authority or subsequent ratification.'

In Harrow *v.* Farrow, the Court says:

An attorney-at-law has no authority to release a judgment obtained by him for his client without a new warrant. He remains attorney while the judgment may be executed without new proceedings for its enforcement, not for its release. He had no authority as mere attorney to make such agreement or entry. He had no power as such to release the judgment nor to chaffer with the opposite party and receive money or other things in satisfaction of a judgment for land, nor can it make any difference or add any superior sanctity to the arrangement that it was entered of record in open court. The action of the attorney in this case having been without authority previously given, has it been adopted and ratified by those having authority to ratify it, and thus cause it to bind and conclude them or to estop them?

Ratification is where a person adopts a contract or other transaction which is not binding on him, because entered into by an unauthorized agent or the like; if he adopts it, he is said to ratify it, and then it is as effectual as if it had been originally made with his authority, for *ratihabitio mandato comparatur.*

Ratification of a contract is an agreement to adopt an act performed by another for us.

By ratifying a contract, a man adopts the agency—altogether as well what is detrimental as that which is for his benefit.

In the Pittsburgh and Steubenville Railroad Company *v.* Gazzan, it is said that ratification of a contract necessarily implies the relation of principal and agent, and unless that relation existed, the idea of ratification is necessarily excluded. But a ratification of his acts, unless done with full knowledge of his whole proceedings relative thereto, does not estop or bind the principal. From the evidence it is clear that after the death of Abraham Pennypacker, and prior to this alleged settlement, C. H. Pennypacker, the attorney, had not been employed by any one to collect the amount due on the judgment, or to make any arrangement concerning it; there was no

administrator, and he says in his testimony he did not in-
form the widow and children of the settlement he had
made until about a week afterwards, about the 16th or
17th of January. He does not say that he had any prior
authority from them to make such arrangement. Where
then did he obtain his authority? Who was his client?
Whose agent was he? It does not appear that he was
employed by any one, and, although he has labored most
assiduously to have his act ratified, he has, in our judg-
ment, after a full examination of the testimony presented,
wholly failed to obtain a legal ratification thereof, and we
shall therefore be obliged to make the rule absolute."

The defendant thereupon took this writ, assigning for
error the action of the court in making absolute the rule
to strike off the entry of satisfaction, in holding that C.
H. Pennypacker had no authority to make the settlement
with the railroad company, and in holding that C. H.
Pennypacker's act in making the settlement had not been
legally ratified.

*H. M. North* and *E. D. North* for plaintiff in error.

Where it is held that an attorney has no power by vir-
tue of his general retainer to compromise a debt, still, if
the client accepts the fruit of the compromise with full
knowledge of it, and without dissent, this may amount to
a ratification, and is equivalent to a previous authority:
Semple *v.* Atkinson, 64 Mo., 504; Benedict *v.* Smith, 10
Piage, 126; Weeks on Attorneys-at-law, §§ 247, 248.

*H. T. Fairlamb* and *Thomas S. Butler* for defendant
in error.

An attorney-at-law has no power after judgment to com-
promise his client's case without the client's authority or
sanction: Housenick *v.* Miller, 12 N., 514.

June 2d, 1884.—Per Curiam: It must be conceded that
after judgment obtained, the implied power of the attor-
ney-at-law who prosecutes the claim to judgment is some-
what limited and restricted. Without previous special
authority or subsequent ratification he cannot compro-
mise the fixed judgment and satisfy the same on the pay-
ment of a part thereof only. As, however, he may collect
the money or a part thereof, so far as the same is actually
paid to him, he may receipt, and to that extent it will
pay and satisfy the judgment. In the present case, the
defendant in the judgment actually paid to the attorney
the sum of $1,458 33. Although the evidence of author-

[Ringwalt *v.* Ringwalt.]

ity to compromise the judgment is not satisfactory, nor the evidence of ratification of the compromise sufficient,· yet the knowledge of the defendant in error that the attorney had received money on the judgment is unquestioned. A portion of this money was paid over to the administrator. While, then, the Court was justified in striking off the satisfaction to that portion of the judgment in excess of the money actually paid by the defendant therein, yet the order should have gone no further. It must be modified accordingly. The sum of $1,458 33 must be applied as a payment on the judgment as of the 10th of January, 1883, and the satisfaction be stricken off as to the residue of the judgment. Thus modified, the judgment is affirmed.